1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          (SBN: 108325)
mark@geragos.com
BEN J. MEISELAS          (SBN: 277412)
ben@geragos.com
MATTHEW M. HOESLY        (SBN: 289593)
mhoesly@geragos.com
MATTHEW J. VALLEJO       (SBN: 322713)
vallejo@geragos.com
ARTHUR KARAGEZIAN        (SBN: 328749)
arthur@geragos.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON      (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER          (SBN: 231335)
mmeuser@dhillonlaw.com
NITOJ P. SINGH          (SBN: 265005)
nsingh@dhillonlaw.com

*Attorneys for Plaintiff PCG-SP Venture I LLC dba V Palm Springs*

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

1

Complaint                                                    Case No.:

PCG-SP VENTURE I LLC
dba V PALM SPRINGS HOTEL, a
limited liability company;

               Plaintiff,

               vs.

**GAVIN NEWSOM**, in his official
capacity as Governor of California;
**XAVIER BECERRA**, in his official
capacity as the Attorney General of
California; and **SONIA Y. ANGELL,
MD, MPH**, in her official capacity as the
Director and State Public Health Officer,

               Defendants.

**CASE NO.**: 5:20-cv-1138

**COMPLAINT FOR DECLARATORY
RELIEF, INJUNCTIVE RELIEF AND
DAMAGES**

**JURY TRIAL DEMANDED**

NOW COMES the above-named Plaintiff PCG-SP Venture I LLC dba V Palm Springs Hotel ("Plaintiff"), by and through its attorneys of record, Geragos & Geragos, APC and Dhillon Law Group Inc., as and for its claims against Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; and Sonia Y. Angell, MD, MPH, in her official capacity as the Director and State Public Health Officer (hereafter collectively referred to as "Defendants"), alleges as follows:

## INTRODUCTION

1.      On April 27, 2020, Attorney General William Barr sent a memorandum to all United States Attorneys regarding civil rights violations occurring in various states during the coronavirus crisis.[1]

---

[1] Available as of the date of filing at: https://cdn.cnsnews.com/attachment/ag_memo_-_balancing_public_safety_with_the_preservation_of_civil_rights_0.pdf.

2

Complaint                                    Case No.:

2.    Attorney General Barr reminded the top federal law enforcement officials of the United States that "the Constitution is not suspended in times of crisis."

3.    In his memorandum, Attorney General Barr directed all United States Attorneys to identify state directives that could be violating the constitutional rights and civil liberties of individual citizens.  Attorney General Barr then directed that:

> If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court.

4.    This lawsuit is filed to challenge the very type of overbearing infringement of constitutional and statutory protections identified by Attorney General Barr.

5.    Defendants have used the coronavirus pandemic to expand their authority by unprecedented lengths, depriving Plaintiff, and all other residents of California, of fundamental rights protected by the U.S. and California Constitutions, especially but not limited to, the rights to liberty, property, and travel, and the right to the equal protection of the law.

6.    It is this Court's duty to defend these constitutional and statutory principles by safeguarding the rights and liberties of Californians that Defendants violate.

7.    This action presents facial and as-applied challenges to the California Governor's March 19, 2020 Executive Order N-33-20 (the "Executive Order").

8.    On or around May 8, 2020, Riverside County reverted most of its local health orders to align with Governor Newsom's statewide stay-at-home order. The County continues to enforce the Executive Order to the extreme detriment of Plaintiff's business.

9.    If allowed to stand, the Executive Order will not only further violate Plaintiff's rights under both the California and U.S. Constitutions, but it will continue to inflict massive and widespread economic damage to Plaintiff—all while unconstitutionally placing the burden of Defendants' respective Orders on the backs of

Complaint                                                                                    Case No.:

both small and large "non-essential" businesses—such as that of Plaintiff—which businesses have already been financially crippled and forced to shut their doors and conduct mass layoffs.

10.     Effective May 21, 2020, Riverside County moved into the accelerated Stage 2 under the Governor's Executive Order, allowing the reopening of shopping centers and restaurants for dining in.    However, Plaintiff is still prevented from reopening its lodging business since hotels throughout the State of California are unable to legally operate. Indeed, Plaintiff's hotel which is labeled as "non-essential" might never financially recover as a result of Defendants' Orders and may end up entirely out of business. The stakes for immediate relief from this Court could not be higher for Plaintiff.

11.     The present situation in Riverside County, and throughout much of the State, is entirely irrational. As of May 29, 2020, Riverside County had a total of 7,486 confirmed cases and 323 deaths as a result of COVID-19.[2]  Of that total, 137 confirmed cases and just 9 deaths have occurred in the city of Palm Springs.[3] Despite these relatively low numbers, Plaintiff is unable to operate its hotel business while similarly situated businesses are permitted to operate. For instance, dine-in restaurants where individuals are in enclosed spaces together for extended periods of time are permitted to

---

[2] *See* Riverside County Covid-19 Cases Data Summary: May 29 available as of the date of filing at:
https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/May/Dashboard/Public_Daily_COVID-19_Updates_052920.pdf
[3] *See* Riverside County Covid-19 Cases by City of Residence: May 29 available as of the date of filing at:
https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/May/Dashboard/City_Report_052920.pdf.

4

operate. Short term vacation rentals are also permitted to re-open.[4] On the other hand, a hotel like the V Palm Springs, which maintains an open floor plan, contains no elevators or enclosed hallways, and which contains most of its public spaces outdoors, is prohibited from operation. This is despite the hotel's commitment to strictly adhere to health and safety guidelines promulgated by the State on May 12, 2020.

12.     The distinctions made by State officials under the present Executive Order are arbitrary and irrational on their face and immensely damaging to Plaintiff.

13.     Plaintiff brings this action challenging the constitutionality of Defendants' Orders, which have deprived it of numerous rights and liberties under both the U.S. and California Constitutions. In doing so, Plaintiff seeks: (1) equitable and injunctive relief to enjoin the enforcement of the Executive Order; (2) declaratory relief that the Executive Order violates Plaintiff's civil rights under: (a) 42 U.S.C. Section 1983 of the Federal Civil Rights Act ("Section 1983"); (b) the Dormant Commerce Clause of Article I, Section 8 of the U.S. Constitution; (c) the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; (d) the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (e) the Takings Clause of the Fifth Amendment to the U.S. Constitution; and (f) Article 1 Sections 1, 7 and 19 of the California Constitution; (3) the reasonable value of property commandeered in violation of California Government Code section 8572; (4) just compensation under California codes in an amount according to proof at trial; (5) attorneys' fees and costs in an amount according to proof; and (6) such other and further relief as the Court deems just and appropriate.

---

[4] See Riverside County Reopening Guidelines, available as of the date of filing at: https://rivcoccsd.org/reopening-guidelines.

Complaint                                                                                           Case No.:

## JURISDICTION, VENUE, AND RELIEF

14.    As explained above, this action arises under various federal statutes and provisions of the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

15.    This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); damages under 42 U.S.C. § 1983 and California law; and attorneys' fees and costs under 42 U.S.C. § 1988.

16.    The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the district in which Defendants maintain offices, exercise authority in their official capacities, and enforce the Executive Order; it is also the district in which a substantial portion of the events giving rise to the claims occurred.

## PARTIES

17.    Plaintiff PCG-SP Venture I LLC dba V Palm Springs Hotel ("V Palm Springs"), at all relevant times, is and was a California limited liability company authorized to do business and doing business in the State of California. Located in Palm Springs, California (Riverside County), V Palm Springs operates a 144-room hotel catering to guests looking to stay in the city of Palm Springs. V Palm Springs has been forced to close since Governor Newsom and the County of Riverside instituted their respective "shut-down" orders, despite the fact that V Palm Springs could have safely operated its business within the CDC's recommended social distancing guidelines.

18.    Defendant Gavin Newsom ("Newsom") is made a party to this action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed the Executive Order on March 17, 2020.

Complaint                                                                Case No.:

19.     Defendant Xavier Becerra ("Becerra") is made a party to this action in his official capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State. Cal. Const. Art. V, § 13.

20.     Defendant Sonia Y. Angell, MD, MPH ("Dr. Angell") is made a party to this action in her official capacity as the Director and State Public Health Officer. Dr. Angell is sued herein in her official capacity under the rule of *Ex Parte Young* to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" which was issued by Dr. Angell on March 22, 2020 to complement Newsom's Executive Order. *See Ex Parte Young*, 209 U.S. 123, 152–154 (1908).

21.     As alleged herein, Defendants are responsible for the implementation of various executive orders and other civil orders ("Orders") that are in direct violation of the U.S. and California Constitutions, including but not limited to, 42 U.S.C. Section 1983. Accordingly, each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

## FACTUAL ALLEGATIONS

22.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of the novel coronavirus, also known as COVID-19.[5]

_____

[5] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, whitehouse.gov (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

Complaint                                                                              Case No.:

23.     Since the initial outbreak of COVID-19 in the United States in February 2020, Defendants have increasingly restricted—where not outright banned— Plaintiff's engagement in constitutionally protected activities.

24.     Specifically, California Governor Gavin Newsom issued a "State of Emergency" order on March 4, 2020 in response to the threat of the spread of COVID-19 throughout California's communities. In so doing, Defendant Newsom subsequently issued the Executive Order on March 19, 2020 which, among other things, mandated that "all residents are directed to immediately heed the current State public health directives."

25.     The state public health directives mandated that "all individuals living in the State of California" were to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

26.     Governor Newsom's Executive Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors[6] whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof," such that Governor Newsom ordered that "Californians working in these 16 critical infrastructure

---

[6] These sectors included the (1) Chemical Sector, (2) Commercial Facilities Sector, (3) Communications Sector, (4) Critical Manufacturing Sector, (5) Dams Sector, (6) Defense Industrial Base Sector, (7) Emergency Services Sector, (8) Energy Sector, (9) Financial Services Sector, (10) Food and Agriculture Sector, (11) Government Facilities Sector, (12) Healthcare and Public Health Sector, (13) Information Technology Sector, (14) Nuclear Reactors Materials, and Waste Sector, (15) Transportation Systems Sector, and (16) Water and Wastewater Systems Sector.

Complaint                                                                                    Case No.:

sectors continue their work because of the importance of these sectors to Californians' health and well-being."

27.     Governor Newsom further declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Governor Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."[7]

28.     As a result of the issuance of Defendant Newsom Order, California businesses which were not part of the 16 "critical infrastructure sectors" described above and were therefore deemed "non-essential" businesses, such as Plaintiff's business, were effectively ordered to shut down under penalty of fine and imprisonment.

29.     On or about March 17, 2020, Cameron Kaiser, the Riverside County Director and Public Health Officer, issued similar "stay-in-place" and "shut-down" orders for all "non-essential" businesses for the County of Riverside[8] ("County Order").

---

[7] Section 8665 of the California Government Code provides that: "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

[8] On April 20, 2020, the County of Riverside, through Defendant Kaiser, modified its Order to begin allowing some "non-essential" businesses to open, including outdoor activities, albeit with limitations and restrictions. https://nbcpalmsprings.com/2020/04/20/riverside-county-allows-outdoor-activities-to-reopen-with-restrictions-including-golf-courses/

9

Complaint                                                                 Case No.:

30.     On or around May 8, 2020, Riverside County reverted most of its local health orders to align with Governor Newsom's statewide stay-at-home order. The County continues to enforce Governor Newsom's Executive Order.

31.     Additionally, on March 22, 2020, Defendant Dr. Angell issued a comprehensive directive[9] enumerating all of the various types of "Essential Critical Infrastructure Workers" that were to "help state, local, tribal and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security."

32.     Taken together, Defendants' Orders have caused widespread and catastrophic damage to the California economy through the government-mandated closure of not only Plaintiff's business, but millions of other "non-essential" businesses across California. As a result, Plaintiff has faced numerous difficulties with respect to its financial obligations, has been forced to lay off a significant number of its employees, and currently faces a very real and a very existential threat to its collective survival and business operations.

33.     At a press conference on March 19, 2020, Newsom repeatedly said the rationale for the Executive Order was to "bend the curve."[10]  He also said "[t]he point of the stay at home order is to make those numbers moot"[11] and put them "in the dustbin of history."[12]  He added that one goal was to slow down transmission enough to reduce

---

[9] https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.
[10] March 19, 2020 press briefing at 0:30-0:35, 8:10-8:20, 10:00-10:15, 24:20-24:30, 33:45-33:55, and 35:17-36:00, available as of May 18, 2020 at: https://www.youtube.com/watch?v=8OeyeK8-S5o.
[11] *Id.* at 35:10-35:20.
[12] *Id.* 33:55-34:05.

10

Complaint                                                                                    Case No.:

the strain it might place on hospital resources.[13]  It is this laudable goal of "bending the curve" that Newsom has now tossed into the dustbin, in favor of an ever-shifting goalpost just out of reach for California's citizens.

34.     In a letter he wrote to President Trump the day before the press conference, on March 18, 2020, Newsom projected that 56 percent of Californians, or roughly 25.5 million people, could be infected over the ensuing eight weeks.[14]  His letter went on to say that "[i]n some parts of our state, our case rate is doubling every four days."[15]

35.     As of May 31, 2020, there were 113,006 confirmed cases,[16] which is only 0.4% of Newsom's projection.

36.     At his March 19, 2020 press conference, Newsom explained that a 20 percent hospitalization rate could mean that California would face a shortfall of 19,543 hospital beds above the state's current capacity of approximately 78,000 beds.[17]  He added that California had a surge capacity of 10,207 additional beds that could partially offset this shortfall.[18]  Thus, he predicted a total shortfall of approximately 9,336 beds.[19]

37.     Mark Ghaly, Newsom's Secretary of Health and Human Services, said that the 56 percent estimate came from "[u]sing the available literature, advice from the CDC and our understanding and experience in California" and that they "applied a variety of different measures that looked at an attack rate, that looked at the $R_0$ … we

---

[13] *Id*. at 5:42-8:09.
[14] Available as of May 30, 2020, at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.18.20-Letter-USNS-Mercy-Hospital-Ship.pdf.
[15] *Id*.
[16] Available as of the date of filing at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.
[17] March 19, 2020 press briefing, at 5:40-7:32, available as of May 30, 2020 at: https://www.youtube.com/watch?v=8OeyeK8-S5o.
[18] *Id*. at 7:20-7:40.
[19] *Id*.

Complaint                                                                                    Case No.:

looked at … hospitalization rates that we had available as well as other outcome measures."[20]

38.    The Secretary also stated that "[w]e knew that the attack rate of 56 percent that we chose was somewhat in the middle between the high-end and the low-end of what we'd seen in the literature . . . ."[21]

39.    Newsom admitted that his numbers did not account for any mitigation measures put in place. Rather, those numbers assumed that "we're just along for the ride[.]"[22]

40.    In contrast, several infectious disease experts, including Professor of Epidemiology John P.A. Ioannidis of Stanford University, called this an extreme, worst-case scenario that was unlikely to happen.[23] These experts are proving correct, and Newsom has been proven wrong, by orders of magnitude.

41.    Although the California Emergency Services Act provides Newsom with the power to unilaterally promulgate regulations in an emergency, such regulations must at least be reasonable. Because such regulations may severely impinge the civil liberties of the populace and curb an individual's freedom, only a clear showing of emergent necessity may justify their imposition. Freedom to move about the state and engage in business is a fundamental right which may be restricted only where necessary to further the most compelling state interest, and such regulations must be narrowly circumscribed

---

[20] *Id*. at 28:49-31:11.

[21] *Id*.

[22] *Id*. at 24:20-24:40.

[23] *Newsom: 56 % of Californians Could Get Coronavirus If Nothing Is Done*, San Francisco Chronicle, March 19, 2020, available as of May 20, 2020 at: https://webcache.googleusercontent.com/search?q=cache:sokxG9_b-2oJ:https://www.sfchronicle.com/health/article/Newsom-56-of-Californians-could-get-coronavirus-15144438.php+&cd=1&hl=en&ct=clnk&gl=us.

Complaint                                                                                      Case No.:

to withstand a constitutional challenge for overbreadth and vagueness. *Gayle v. Governor of Guam*, 414 F. Supp. 636, 638-39 (D. Guam 1976) (citing *Carroll v. United States*, 267 U.S. 132 (1925)); *People v. McKelvy*, 23 Cal.App.3d 1027 (1972).

42.    It is widely accepted and understood that the judiciary defers to the executive branch during states of emergencies. However, the judiciary must at least review the executive's claims of emergency and not serve as a mere rubber-stamp. Additionally, a deferential "hands-off" approach goes out the window if the legislature has limited the executive's exercise of emergency authority. *See Humanitarian Law Project v. U.S. Treasury Dep't,* 578 F.3d 1133, 1145 (9th Cir. 2009) (reviewing Executive Order 13224—President's Bush invocation of authority under the International Emergency Economic Powers Act (IEEPA), declaration of national emergency, sanctioning of terrorist groups, and authorizing of Treasury to designate further terrorist groups for sanctioning—in ruling that it was not unconstitutionally vague); *see also United States v. Nazemzadeh*, No. 11 CR 5726 L, 2014 WL 310460, at 8 (S.D. Cal. Jan. 28, 2014) ("[IEEPA was] a response to two developments: first, extensive use by Presidents of emergency authority under section 5(b) of the Trading with the Enemy Act of 1917 to regulate both domestic and international economic transactions unrelated to a declared state of emergency . . ."). The California Legislature has codified the procedures and limitations on the executive's emergency powers in California Government Code section 8550, *et seq*.  These laws are not mere surplusage, and Newsom's actions must be measured against limitations placed on his office's powers by the people through their elected representatives.

43.    California state courts also assess an executive's declaration of emergency, its justifications, and orders promulgated under said declaration. *See California Corr. Peace Officers Assn. v. Schwarzenegger*, 163 Cal. App. 4th 802, 818 (2008) (assessing whether Governor's declaration met requirements of Emergency Services Act before ruling that the declaration and the emergency cited—and overcrowded prisons—met the requirements).

13

44.     The statutory authority by which the Defendants are attempting to exercise their purportedly untrammeled authority also requires the immediate discontinuation of the Orders once the emergency conditions have abated. California Government Code section 8567 provides that "[w]henever the state of war emergency or state of emergency has been terminated, the orders and regulations shall be of no further force or effect." Gov't Code § 8567.  Section 8629 further requires that the Governor "shall proclaim the termination of a state of emergency at *the earliest possible date* that conditions warrant." *Id.* § 8629 (emphasis added.) Continuing the state of emergency despite the abatement of the emergency conditions giving rise to it is *ultra vires,* would constitute an abuse of discretion, and is plainly subject to judicial review.

45.     On information and belief, Plaintiff alleges that conditions giving rise to the Governor's Proclamation on March 4, 2020 no longer meet the requirements of California Government Code section 8558, which requires conditions that "by reason of their magnitude, are or are likely to be beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city and require the combined forces of a mutual aid region or regions to combat."  Gov't Code § 8558.

46.     During a briefing on April 16, 2020, Newsom stated that "[we] have successfully bent and arguably flattened the curve in the state of California."[24] Therefore, by Governor Newsom's own admission, no rational basis exists any longer to justify the Executive Order or any County Order.

47.     Subsequently, Governor Newsom has begun slowly modifying the stay-at-home Order to allow certain businesses to reopen in accordance with public health guidelines. Riverside County has moved into the accelerated Stage 2 under the

---

[24] April 16, 2020 briefing by the Governor at 37:20, transcript available as of the date of filing, at: https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16.

14

Governor's Executive Order effective May 21, 2020 which means that dine-in service may resume for restaurants by following the Public Health Guidelines. In fact, the neighboring property to Plaintiff, a venerable landmark steakhouse called Mr. Lyons, is now open for dining in-house as of May 22, 2020.

48.    Despite the disease curve having been flattened weeks ago, and with Riverside County having relatively low numbers (323 deaths and the City of Palm Springs having just 9 deaths as a result of COVID-19), Plaintiff's hotel has not been allowed to reopen. As of May 29, 2020, the County of Riverside and the City of Palm Springs have deferred decision-making to the State on whether to allow Plaintiff to reopen, while simultaneously allowing restaurants and short-term vacation rentals in the City of Palm Springs to reopen.

49.    There is no rational basis why Plaintiff's hotel should not be allowed to reopen safely. There is no difference between short term vacation rentals and hotels, other than the fact that hotels likely have more resources available to fully adhere to the State's health and safety guidelines. The State's distinction between short term vacation rentals and hotels is completely arbitrary.

50.    The V Palm Springs Hotel maintains an open floor plan and does not contain any elevators. There are no enclosed hallways, and the hotel's public spaces are mainly outdoors. The hotel maintains a large, spacious lobby where all guests and employees will be able to maintain the CDC's six-feet social-distancing guidelines. In addition, all lounge chairs in the lobby and all pool furniture have already been arranged more than six feet apart from one another in order to comply with the Center for Disease Control (CDC) Guidelines, and all other State reopening guidelines. The parking located on the premises is an open outdoor lot with ample space. Both restaurants in the Hotel also contain ample outdoor seating and have been arranged with similar social distancing measures. The Hotel plans to offer safe room-service for all guests on property, utilizing disposable single-use dining ware. The Hotel also plans to

Complaint                                                                              Case No.:

maintain responsible property occupancy measures to ensure safety for all guests.

51.    In addition to having an open floor plan and complying with social distancing guidelines, the Hotel staff has received training regarding enhanced safety procedures and will be actively taking extra precautions to ensure the safety and well-being of guests and other staff at the Hotel. Hotel staff will be required to wear face coverings. Hand sanitizer stations will be added throughout the Hotel and sanitizers and face masks will be available to hotel guests upon request. In sum, V Palm Springs is committed to implementing and strictly following the Public Health Guidelines for hotels and lodging promulgated by the State on May 12, 2020.[25]

52.    Studies and health data show that the Executive Order would not only be of no benefit to preventing the transmission of COVID-19 or death from it—it could actually be detrimental to such efforts.

53.    First, open air and sunlight (whether the mechanism of action is UV radiation or thermal energy) reduce the likelihood of transmission; the open air seemingly dissipates viruses to a negligible amount,[26] while sunlight lessens the lifetime of an infectious, viral particle.[27] [28] A Department of Homeland Security official revealed

---

[25] https://covid19.ca.gov/pdf/guidance-hotels.pdf
[26] Available as of the date of filing at:
https://www.medrxiv.org/content/10.1101/2020.04.04.20053058v1.
[27] Available as of the date of filing at:
https://www.sciencedirect.com/science/article/pii/S016609340400179X (similar coronavirus, the one that causes the SARS outbreak, is vulnerable to UV radiation).
[28] Available as of the date of filing at: https://www.newsweek.com/sunlight-killscoronavirus-scientist-1500012.

Complaint                                                                                          Case No.:

that the preliminary results from a study showed that sunlight and high temperatures could destroy a COVID-19 viral particle within minutes.[29]

54.     Second, COVID-19 seems to most severely affect those with underlying medical issues. The lack of access to fresh air, sunlight, exercise and social companionship (even from six feet away) may be detrimental, if not downright deadly, to the physical and psychological health of humans.[30] Substance abuse relapse, lower immune system response, and higher risks for other medical conditions leaves one more vulnerable to COVID-19 transmission, infection, and death.[31]

55.     Finally, official health bodies do not recommend the closure of public spaces and or the implementation of major, internal travel restrictions. For example, the CDC's official mitigation guidelines for COVID-19 make no mention of closing public parks or beaches.[32] WHO and European CDC guidelines also advise against "internal travel restrictions" during a pandemic because they have little effect on reducing transmission, while imposing huge social and economic costs.[33] There is little to no

---

[29] Available as of the date of filing at: https://www.reuters.com/article/us-health-coronavirus-trump/sunlight-heat-and-humidity-weaken-coronavirus-u-s-officialsays-idUSKCN2253SA.

[30] City Council meeting with video showing discussions with doctors at Hoag Hospital about observing increase in at 11:55-12:10, available as of May 30, 2020 at: http://newportbeach.granicus.com/MediaPlayer.php?view_id=44&clip_id=3477.

[31] Available as of the date of filing at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[32] Available as of the date of filing at: https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.

[33] "There is limited evidence for the effectiveness of internal travel restrictions, and it has legal, ethical and economic implications. Although 37% of national pandemic preparedness plans of Member States have travel restriction plans as a component of NPIs (65), the acceptability is still undetermined." World Health Organization, *Nonpharmaceutical public health measures for mitigating the risk and impact of epidemic and pandemic influenza*, at p. 71, as of May 30, 2020, available at:

---

17

scientific support for Defendants' shutdowns of local and state beaches, parks, and other open spaces.

56.     The irrationality of the prohibition on the operation of Plaintiff's hotel business is made even more clear when compared to the State of New York's policies on industry reopening. New York, the main epicenter of the coronavirus pandemic in the United States, permits hotels to operate statewide while continuing to disallow dining-in at restaurants.[34] The Governor of New York extended the stay-at-home order for retailers through May 15, 2020 and made no mention of hotels. Among those still open in New York City, the occupancy rate is about 33 percent.

57.     The Executive Order should be terminated because: (1) the information the Executive Order was based on was flawed; (2) the State and the people of California have been educated about COVID-19 mitigation through public information campaigns and the procurement of medical resources; (3) the citizenry is implementing attack rate mitigation efforts through social distancing, hygiene, mask wear, and other means; and (4) the attack rate has been reduced to a manageable level which other governments have used as a rule of thumb to lift COVID-19 restrictions.

58.     Plaintiff complains against Defendants, and each of them, for violation of Section 1983 to declare and enjoin the enforcement of the following orders:

      a.   Defendant Newsom's Executive Order N-33-20 issued on March 19, 2020;

      b.   Defendant Dr. Angell's designation of "Essential Critical Infrastructure

---

https://apps.who.int/iris/bitstream/handle/10665/329438/9789241516839-eng.pdf?ua=1; *see also* European Centre for Disease Prevention and Control, *Public Health Measures for Influenza Pandemics*, p. 9, § 12 ("Internal travel restrictions [have] minor delaying effect[s] and [m]assive [costs and risks], including social disruption.").

[34] See New York State Phase Two Guidelines, available at the time of filing at https://forward.ny.gov/phase-two-industries.

Complaint                                                                                                        Case No.:

Workers" issued on March 22, 2020, which referenced Defendant Newsom's Executive Order issued three (3) days prior (part of the Executive Order);

59.    Plaintiff has standing to bring Section 1983 claims since it is an aggrieved in fact business that is the subject of enforcement of the overbroad and unconstitutional Orders which have the effect of forcing Plaintiff to bear a public burden by entirely eviscerating Plaintiff's ability to operate its business.

60.    Defendants' Orders and the enforcement of these Orders should be enjoined because:

a.    The Orders plainly violate the Due Process and Equal Protection Clauses of the Fifth and Fourteen Amendments to the U.S. Constitution in that they disparately apply one set of rules to businesses arbitrarily deemed "essential" versus all other businesses (such as Plaintiff's) that are deemed "non-essential" and which must remain closed pursuant to the Orders. Plaintiff avers that ALL businesses in the State of California are "essential" to the health, welfare and well-being of its citizens, and that the general health outcome sought through the passage of these Orders (i.e. lowering the curve of the coronavirus) could have been and can still be accomplished through less restrictive means than those arbitrarily selected by Defendants. Additionally, there is no rational basis for allowing the reopening of certain businesses such as restaurants while prohibiting substantially similar businesses like Plaintiff's hotel business from reopening, even when Plaintiff's business would be safer to operate.

b.    The Orders effectively amount to an impermissible "partial" or "complete" taking in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution in that the prohibition of Plaintiff's operation of its business constitutes a regulatory taking of private property, for public

19

purpose, without providing just compensation therefor. Furthermore, the Orders violates the Takings Clause of the Fifth Amendment in that the complete prohibition on the business operations of "non-essential" businesses constitutes an irrational, arbitrary, and capricious law bearing no rational basis to any valid government interest. The notion that the government-ordered shutdown of "non-essential" businesses (such as Plaintiff's) is absolutely necessary to curb the spread of the coronavirus constitutes an unconstitutional infringement on Plaintiff's civil rights and liberties to operate in a free-market economy. As national and statewide data has recently suggested, the economic impact of the mandatory, unconstitutional closures of "non-essential" businesses has had an unnecessarily devastating and unprecedented crippling effect on local and state economies. ALL businesses are "essential" and necessary to the maintenance of the health, welfare and prosperity of California's citizens.

c. The Orders violate the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.

d. The Orders violate the Dormant Commerce Clause of Article I, Section 8.

e. The Orders violate Article 1 Sections 1, 7 and 19 of the California Constitution.

61. Defendants' Orders are not "narrowly tailored" to further any compelling governmental interest. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiff to engage in equivalent business activities provided that Plaintiff also adhere to the social distancing guidelines currently in place for other businesses.

Complaint                                                                                                    Case No.:

62.     Unless and until injunctive relief is granted, Plaintiff will continue to suffer irreparable harm for which it is left without an adequate remedy at law, in that it is subject to criminal penalties (i.e. misdemeanor citations and fines) based on the enforcement of the Orders. For example, Defendant Newsom has made it a point to "prosecute" and "fine" all non-conforming "non-essential" businesses that refuse to close their doors and shut down their lawful business operations during this pandemic.

### FIRST CLAIM FOR RELIEF
### DORMANT COMMERCE CLAUSE
### (*By Plaintiff against All Defendants*)

63.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

64.     The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate commerce with foreign nations, among the several States and with the Indian Tribes." U.S. Const. art. 1, § 8, cl. 3. 71. In its dormant state (often called the Dormant Commerce Clause), the Commerce Clause precludes states from enacting legislation that discriminates against or impermissibly burdens interstate commerce. State laws that facially discriminate interstate commerce are invalid per se under the Commerce Clause. This is true also of state laws that are facially neutral, if they impermissibly burden interstate commerce in practice. *West Lynn Creamery v. Healy*, 512 U.S. 186, 194–195 (1994).

65.     Although the Dormant Commerce Clause is usually invoked to challenge protectionist laws that favor in-state businesses over out-of-state businesses, the Clause has a broader function: to guarantee for all citizens the right to access and to participate in interstate commerce. Just as no state can prevent out-of-staters from engaging in commerce with its residents, no state may prevent its residents from participating in commerce with those located in another state.

66.     The Executive Order impermissibly restricts Plaintiff from exercising its

21

Complaint                                                              Case No.:

right to engage in interstate commerce.

67.    The V Palm Springs is a hotel in the heart of Palm Springs, which is a popular location for tourism. Before the Orders, the Hotel generated consistent business from guests staying at the Hotel. The Orders have prevented both in-state and out-of-state guests from staying at and visiting the Hotel.

68.    Governor Newsom acted under color of State law in his official capacity as the Governor of California and within the scope of his official duties when issuing the Executive Order.

69.    Plaintiff seeks a declaration that the Executive Order violates the Dormant Commerce Clause, and an injunction against further infringements of its rights under this Clause as described in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF

## DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### (*By Plaintiff against All Defendants*)

70.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

71.    Under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

72.    Plaintiff has a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

73.   The Orders and Defendants' enforcement thereof violate Plaintiff's substantive due process rights secured by the Fourteenth Amendment. Defendants' Orders, which expressly deprive Plaintiff of its rights and liberties in lawfully operating its business by ordering the closure of "non-essential" businesses, did not afford Plaintiff with a constitutionally adequate hearing to present its case for its business to not be shut down or to be allowed to open as soon as conditions allowed. At a minimum, Plaintiff avers that it should have been able to decide for itself whether to "shut down" if its business was not equipped to properly deal with the health and safety guidelines issues by the federal and California state governments in connection with the COVID-19 crisis.

74.   Defendants failed to comply with the procedural and substantive requirements of the U.S. Constitution in connection with Plaintiff's rights and liberties as it relates to its business, which would have given Plaintiff a meaningful opportunity to respond to the proposed Orders and explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiff.

75.   Because Defendants' decisions in issuing their Orders were made in reliance on procedurally deficient and substantively unlawful processes, Plaintiff was directly and proximately deprived of its property, and consequently, its ability to lawfully operate its business without unconstitutional government overreach.

76.   Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of the California Constitution and related laws and statutes with respect to their ability to order the statewide "closure" of all "non-essential" businesses, Plaintiff was directly and proximately deprived of its property rights absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

Complaint                                                                                    Case No.:

77.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

78.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

79.     Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### (*By Plaintiff against All Defendants*)

80.     Plaintiff incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

81.     The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

82.     At its core, the Equal Protection Clause of the Fourteenth Amendment functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, persons similarly situated must be similarly treated. Equal protection is extended when the rules of law are applied equally in all like cases and when persons are exempt from obligations greater than those imposed upon others in like circumstances. Equal protection requires the state to govern impartially—not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection.

Complaint                                                                Case No.:

83.     The Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiff.

84.     Defendants have intentionally and arbitrarily categorized California businesses and conduct as either "essential" or "non-essential." Those businesses classified as "essential," or as participating in "essential services," are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "non-essential," or as engaging in "non-essential activities," are required to shut down and have their workers stay in their residences, unless it becomes necessary for them to leave for one of the enumerated "essential" activities.

85.     Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to due process and the right to travel (both interstate and intrastate), among others.

86.     The Orders do not pass muster under a strict scrutiny analysis because their arbitrary classifications are not narrowly tailored to further compelling government interests, for the reasons stated above.

87.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

88.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

89.     Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law.  Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

//
//
//

25

Complaint                                                                    Case No.:

## **FOURTH CLAIM FOR RELIEF**

## **VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**

### (*By Plaintiff against All Defendants*)

90.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

91.     The Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." See *Armstrong v. United States* (1960) 364 U.S. 40, 49.

92.     The California Supreme Court has found that "[w]hile the police power is very broad in concept, it is ***not without restrictions*** in relation to the taking of damaging of property. When it passes ***beyond proper bounds in its invasion of property rights***, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." *House v. Los Angeles County Flood Control Dist*., 25 Cal.2d 384 (1944) (emphasis added). The *House* Court went on to specifically list four (4) examples when a taking was *not* eligible for compensation:  (1) destroying a building in front of a fire so as to create a fire break, (2) destroying a diseased animal, (3) rotten fruit or (4) infected trees.

93.     In this case, *none* of these examples applies to Plaintiff's situation. Defendants' Orders mandated that because Plaintiff's is a "non-essential" business, it was required to "shut down" and cease all operations as a means to help curb the spread of COVID-19. Such a mandate completely and unconstitutionally deprives Plaintiff of all economically beneficial use of its businesses without just compensation.

94.     While the "police power" is inherent in a sovereign government and is reserved for the states in the 10th Amendment to the U.S. Constitution, it is not without constitutional limits. See *Euclid v. Ambler Realty Company,* 272 U.S. 365 (1926) (holding that local governments may protect the general welfare through the enactment

26

Complaint                                                                                          Case No.:

of residential zoning ordinances). In California specifically, the Constitution directly gives this power to cities and counties. As such, these agencies (such as the County Defendants) have the power and authority to make and enforce laws to protect public health and safety to the extent that they do not conflict with California state laws. *See* Cal. Const. Article XI Section 7; *Miller v. Board of Public Works,* 195 Cal. 477 (1925). However, a government's "police power" in this area is restricted by constitutional considerations, including the Fifth Amendment's "Takings Clause," as well as eue process and equal protection.

95.     Defendants' Orders and the enforcement thereof have caused both a complete and total regulatory and physical taking of Plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution. At a minimum, the effect of Defendants' Orders constitutes a "partial" taking under the *Penn-Central* three-factor test. *See Penn Central Trans. Co. v. City of New York*, 438 U.S. 104, 124 (1978). As a result, Defendants' blatant violation of the Takings Clause has caused proximate and legal harm to Plaintiff.

96.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

97.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

98.     Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

//

//

//

27

Complaint                                                                                          Case No.:

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF THE CALIFORNIA CONSTITUTION**

**Right to Liberty (Cal. Const. Art. 1, § 1)**

(*By Plaintiff against All Defendants*)

99.  Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

100.  Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens. Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Section 1 of the California Constitution provides, in pertinent part:

> Article 1, Section1: All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

101.  Defendants' Orders have not only interfered with Plaintiff's rights and liberties as set forth under Article 1, Sections 1, 7, and 19 of the California Constitution, but they have further deprived Plaintiff of the use, enjoyment and ability to operate its business on account of a discriminatory classification as a "non-essential" business.

102.  Defendants' Orders have proximately and legally caused tremendous financial harm not just to Plaintiff's business, but to the entire California economy, which will continue to have deleterious effects unless and until Defendants are enjoined by this Court from enforcing their respective Orders.

103.  California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be

28

able to show "probable cause to believe the person so held has an infectious disease ..." *Id.*

104.   California courts have previously held that Public Health Officials could not quarantine twelve (12) blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. *See Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (C.C. Cal. 1900).   The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed."   *Jew Ho*, 103 F. 10.

105.   California courts have further held that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

106.   In *Jew Ho v. Williamson,* 103 F. 10 (C.C. Cal. 1900) and *Wong Wai v. Williamson,* 103 F. 1 (CC Cal. 1900), the courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

107.   Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates its liberty rights under the California Constitution.

108.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

109.   Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 7)

### (*By Plaintiff against All Defendants*)

110.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

111.   Article 1, Section 7 of the California Constitution provides, in pertinent part:

Article 1, Section 7:

(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

30

Complaint                                                                                                      Case No.:

112.   California's constitutional guarantee of equal protection and the Fourteenth Amendment's guarantee of equal protection are substantially equivalent and analyzed in similar fashion. *Kenneally v. Medical Board,* 27 Cal.App.4th 489 (App. 2 Dist. 1994).

113.   In addition, California's constitutional guarantee of equal protection under Article 1 Section 7 of the California Constitution has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. *People v. Romo*, 14 Cal.3d 189 (1975); *Gray v. Whitmore,* 17 Cal.App.3d 1 (1971).

114.   Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates its liberty rights under the California Constitution.

115.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

116.   Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## SEVENTH CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA CONSTITUTION
### Right to Liberty (Cal. Const. Art. 1, § 19)
### (*By Plaintiff against All Defendants*)

117.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

118.   Article 1, Section 19 of the California Constitution provides, in pertinent part:

Article 1, Section 19:

31

Complaint                                                                 Case No.:

(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

119.    California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Jefferson Street Ventures, LLC v. City of Indio,* 236 Cal.App.4th 1175 (App. 4 Dist. 2015).

120.    Moreover, the principle behind the concept of just compensation for property taken for public use is to put the owner in as good a position pecuniarily as he or she would have occupied if his or her property had not been taken. *City of Carlsbad v. Rudvalis,* 109 Cal.App.4th 667 (App. 4 Dist. 2003).

121.    Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking. *Emeryville Redevelopment v. Harcros Pigments, Inc.*, 101 Cal.App.4th 1083 (2002).

122.    Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates its liberty rights under the California Constitution.

123.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from enforcing the Orders.

32

Complaint                                                                                                    Case No.:

124.    Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### EIGTH CLAIM FOR RELIEF

### VIOLATION OF CAL. GOV. CODE § 8572

### Commandeering Private Property or Personnel

### (*By Plaintiff against Defendant Newsom*)

125.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

126.    The State of California's Government Code Title 2, Chapter 7, Article 3, Section 8572, reads, in pertinent part:

> In the exercise of the emergency powers hereby vested in him during a state of war emergency or *state of emergency*, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and *the state shall pay the reasonable value thereof*. (Emphasis added).

127.    By virtue of his Executive Order, Defendant Newsom commandeered and utilized Plaintiff's "non-essential" business for the purpose of slowing the spread of COVID-19.

128.    To date, the State of California has not paid Plaintiff the "reasonable value thereof" in exchange for Defendant Newsom's commandeering and utilization of Plaintiff's "non-essential" business.

129.    Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under California Government Code Section 8572. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

Complaint                                                                                      Case No.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NINTH CLAIM FOR RELIEF

### JUST COMPENSATION UNDER CALIFORNIA CODE

### Claim for Damages

### (*By Plaintiff against All Defendants*)

130.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

131.   California law requires the state to pay the reasonable value should the Governor "utilize any private property … deemed by him necessary in carrying out the responsibilities …" of the California Emergency Services Act.  Cal. Gov. Code § 8572.

132.   California law requires the State to reimburse its citizens for any losses incurred by compliance with such an order.  *See, e.g.*, Cal. Health and Safety Code § 101025 ("and provide for the payment of all expenses incurred in enforcing them"); *id.* § 101040 (preventive measures in an emergency shall be funded by the county imposing the order); *id.* § 120210 (owners of property lost as a result of a quarantine order may be compensated).

133.   The Executive Order does not include any means to reimburse Plaintiff for its losses.

134.   But for the Orders, Plaintiff would not have shut down its Hotel and forfeited substantial revenue which it will never recover.

135.   It was foreseeable that the Orders shutting down Plaintiff's business would result in massive economic losses to Plaintiff.

136.   As a proximate result of Defendants' actions, Plaintiff has been damaged in a sum according to proof at the time of trial.

### REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)   Issue a declaratory judgment:

Complaint                                                                                                   Case No.:

a. That Defendant Newsom's March 19, 2020 Executive Order N-33-20 is null and void and of no effect, as:

    i. unconstitutional under the Fifth Amendment;

    ii. unconstitutional under the Fourteenth Amendment;

    iii. arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

    iv. contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

    v. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

b. That Defendant Dr. Angell's March 22, 2020 enumerated list of "Essential Critical Infrastructure Workers" following Defendant Newsom's Executive Order N-33-20 is null and void and of no effect, as:

    i. unconstitutional under the Fifth Amendment;

    ii. unconstitutional under the Fourteenth Amendment;

    iii. arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or California Constitutions;

    iv. contrary to constitutional right, power, privilege, or immunity in violation of the U.S. and/or California Constitutions;

    v. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or California Constitutions.

(2) Set aside and hold unlawful Defendants' Orders.

(3) Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants, from enforcing the Orders.

35

Complaint                                                               Case No.:

(4)   Issue a temporary restraining order and a preliminary injunction preventing Defendants from enforcing their Orders until this Court decides the merits of this lawsuit.

(5)   Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcing the Orders unless they are issued in accordance with all procedural and substantive due process requirements of the U.S. Constitution.

(6)   Award Plaintiff damages arising from its Section 1983 Claims, and specifically under the Fifth Amendment of the U.S. Constitution and Article 1, Section 19 of the California Constitution's Takings Clause.

(7)   Award Plaintiff the reasonable value of the loss of its business by virtue of Defendant Newsom's Executive Order pursuant to California Government Code Section 8572.

(8)   Award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 42 U.S.C. Section 1988, California Code of Civil Procedure Section 1021.5, and any other legal basis for such fees and costs as may apply;

(9)   For compensatory damages in the sum of according to proof at trial; and

(10) Grant all other such relief as the Court may deem just and proper.

Dated:  June 2, 2020              **GERAGOS & GERAGOS, APC**


                                    /s/ Mark J. Geragos
                                   Mark J. Geragos, SBN 108325

                                   Ben J. Meiselas, SBN 277412

                                   Matthew M. Hoesly, SBN 289593

                                   Matthew J. Vallejo, SBN 322713

                                   Arthur Karagezian, SBN 328749

Complaint                                                        Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DHILLON LAW GROUP INC.**

 /s/  Harmeet K. Dhillon
Harmeet K. Dhillon, SBN 207873

Mark P. Meuser, SBN 231335

Nitoj P. Singh, SBN 265005

*Attorneys for Plaintiff*

*PCG-SP Venture I LLC dba V Palm Springs*

**JURY TRIAL DEMANDED**

37

Complaint                                                                                     Case No.: